IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
DANIEL ACKERMAN,

               Plaintiff,

     - against -

NOAH PINK, APPLE INC.,
ACCESS INDUSTRIES, INC.,
AI PRODUCTIONS LTD.,
MARV STUDIOS LTD.,
FB COMMISSIONING LTD.,
MAYA ROGERS, TETRIS HOLDING, LLC,


               Defendants.
--------------------------------------------------------------------X

**COMPLAINT AND
JURY DEMAND**

Case No.

Plaintiff Daniel Ackerman ("Plaintiff" or "Ackerman") by and through his undersigned

attorneys, The Landau Group, PC, as and for his Complaint against Defendants NOAH PINK,

APPLE INC., ACCESS INDUSTRIES, INC., AI PRODUCTIONS LTD., MARV STUDIOS

LTD., FB COMMISSIONING LTD., MAYA ROGERS, THE TETRIS COMPANY

(collectively "Defendants"), alleges as follows:

## I.  PRELIMINARY STATEMENT.

1.  The movie entitled "Tetris" demonstrated the confiscation of Dan Ackerman's original

work and creation of his book "The Tetris Effect."

2.  Plaintiff Ackerman's book took a unique approach to writing about the real history of

Tetris, as it not only applied the historical record, but also layered his own original research and

ingenuity to create a compelling narrative non-fiction book in the style of a Cold War spy

thriller.

1

3.   Mr. Ackerman's literary masterpiece, unlike other articles and writings, dispelled of the emphasis on the actual gameplay and fans, and instead concentrated on the surrounding narrative, action sequences, and adversarial relationship between the players.

4.   This was the identical approach Defendants adopted for the Tetris Film, without notable material distinction, but often resonating the exact same feel, tone, approach, and scenes as the book introduced several years prior.

5.   As demonstrated herein, it becomes readily apparent that the Tetris film is substantially similar in almost all material respects including specific chapters and pages of said book that were simply adopted from the book to the film, without Plaintiff's knowledge, authorization, or consent.

## II.      JURISDICTION AND VENUE.

6.   The court has original jurisdiction over this action under 17 U.S.C. § 501, et seq., and 28 U.S.C. §§ 1338(a).

7.   Venue in this district is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the within claims occurred in this judicial district, and under 28 U.S.C. § 1400(b) in that it is a judicial district where defendant has committed acts of copyright infringement and had a regular and established place of business. Venue and jurisdiction is also proper in this Court because Plaintiff and co-Defendant ACCESS INDUSTRIES, INC. are residents of New York.

## III.      PARTIES.

8.   Plaintiff Dan Ackerman is a renowned technology and video game journalist, and has written about technology and video games for numerous publications and is a regular technology expert on various media outlets. Currently, Mr. Ackerman is Editor-in-Chief of noted tech news

and reviews website Gizmodo. Prior to that, he was a long-time Editorial director at CNET, where he led a team covering the vast personal technology industry. Mr. Ackerman also appears frequently as a commentator and long-time in-house tech expert on CBS Mornings.

9.   Upon information and belief, Defendant Noah Pink is a Canadian citizen and purported screenwriter, and currently resides in Toronto, Ontario. When Mr. Ackerman created and published his book The Tetris Effect, Mr. Pink was unknown within the film industry and had no screenwriting credits to his name.

10. Defendant Pink has been credited as the screenwriter for the Tetris film.

11.   Defendant APPLE INC. is a Delaware Corporation with corporate offices in multiple countries and major US cities, including New York.  Apple is the platform and distributor for the Tetris film, and continues to show the Tetris film on its Apple TV platform in violation of Mr. Ackerman's copyright.

12. Co-Defendant ACCESS INDUSTRIES, INC is a New York corporation and resident of New York conducting business and maintaining an office in New York City with a registered office at  80 State Street, Albany, New York 12207, and principal corporate offices at 730 Fifth Ave, 20th Floor, New York, New York 10019. Access Industries is one of the producers for the Tetris film.

13. Upon information and belief, Defendant AI PRODUCTIONS LTD. is a subsidiary of Access Industries, with offices at 28 Church Road, Stanmore, Middlesex, England HA7 4XR. AI Productions is one of the producers for the Tetris film.

14.   Defendant MARV STUDIOS LTD. is an English private limited company with a registered office address at 11 Portland Mews, London, England, W1F 8JL, and conducting

business with a fair amount of permanency and presence in New York. Marv Studios is one of the producers for the Tetris film.

15. Defendant FB COMMISSIONING LTD. is an English private limited company with a registered office address at 11 Portland Mews, London, England, W1F 8JL, and conducting business with a fair amount of permanency and presence in New York. FB COMMISSIONING is one of the producers for the Tetris film.

16. Defendant The Tetris Company is a Nevada corporation formed on November 27, 2018 with a Registered Office at 9788 GILESPIE STREET, SUITE 418, LAS VEGAS, NV, 89183. The Tetris Company is the manager and licensor for the Tetris brand to third parties.

17. Maya Rogers is a resident of Hawaii and Nevada, and is the CEO of the Tetris Company. Ms. Rogers is also an Executive Producer on the Tetris Film.

## IV.    STATEMENT OF FACTS.

### a.  History and Creation of The Tetris Effect.

18. Beginning between March and April 2014, Mr. Ackerman began the creative process for his book "The Tetris Effect: The Game That Hypnotized The World." [1]

19. In an email to his literary agent Kristen Neuhaus, Mr. Ackerman drafted a list of non-fiction book ideas that included what would become his book on Tetris and its association to the Soviet Union and media baron Robert Maxwell. Also, included in this email were references to how compelling of a story his book idea was, and its potential audience.

20. In this initial outline for the Tetris Effect, the roadmap for Mr. Ackerman's book took shape, including its compelling narrative that would focus on the connection to the USSR and the global fight to obtain the rights to Tetris.

---

[1] The subheading for the UK edition was "The Tetris Effect: The Cold War Battle for the World's Most Addictive Game."

21. This idea would turn into Mr. Ackerman's book the Tetris Effect, and form the basis of the Tetris movie.

22. In an email drafted on or about April 24, 2014, Plaintiff Ackerman sent to his agent, Ms. Neuhaus, a consolidated list of the main historical figures Mr. Ackerman would highlight in his book on Tetris, and a roadmap as to how numerous characters and events that would be portrayed in the book.

23. The characters, story, presentation and underlining themes as observed in the Tetris film, were substantially similar, if not identical, to those proffered and included at the heart of Mr. Ackerman's book several years before.

24. For instance, on April 28, 2014, Mr. Ackerman sent an email to Ms. Neuhaus and provided an overview of the characters of the book, with character sketches. Said characters and sketches would shape the main characters of Mr. Ackerman's book, as well as the main character in the Tetris film.

25. On or about May 2, 2014, Mr. Ackerman had already drafted a seven (7) page overview of his Tetris story, including his focus on Cold War intrigue and placing an outsized role on the Russian government organization ELORG; a unique focus again copied by the film and a climatic "three-way race to Moscow between Rogers, Maxwell and Stein.

26. On or about May 21, 2014, Mr. Ackerman created a rough chapter outline of his subsequent book. This outline covered the creation of Tetris and the legal and business battles in Russia

27. By May 23, 2014, Mr. Ackerman had drafted his original book proposal that specifically told the Tetris story based on a Cold War thriller with a political intrigue angle.

28. This proposal would go through a few revisions but the May 23, 2014, version is the earliest version for Ackerman's subject book The Tetris Effect.

29. During August to September 2014, Ackerman went through several drafts, but a first sample chapter went to potential publishers as part of the book proposal during this time.

30. Also, during this time, Ackerman exchanged various emails with his literary agent regarding the Tetris Effect book and the sample chapter and proposal of the book that would be sent to potential publishers.

31. In these emails, Mr. Ackerman and Ms. Neuhaus discuss the structure of the book, how it could be sold to publishers, and hashed out how Henk Rogers could be the heroic main character as well as emphasizing the international conflict and cold war angle.

32. Henk Rogers became the protagonist in Ackerman's book The Tetris Effect, as well as the main character of the Tetris movie.

33. By October 6, 2014, Ackerman's agent advised via email as to foreign interest in Ackerman's book.

34. On October 21, 2014, the trade magazine Publisher's Marketplace ran a blurb of Mr. Ackerman's book, and noted his book deal with Public Affairs, as well as the title of the book The Tetris Effect by Dan Ackerman. See https://www.publishersmarketplace.com/pm/search?ss_q=tetris+effect&ss_c=deal ("CNET and Spin tech writer Dan Ackerman's THE TETRIS EFFECT, the story of the invention, stealing, and improbable cultural legacy of an abstract but powerfully addictive video game.")

35. By February 2015, Mr. Ackerman arranged interviews with Sean Maggard (PR for Tetris, Inc.) setting up interviews with some of the key players and characters of the Tetris story, such as Henk Rogers, Alexey Pajitnov, and Maya Rogers.

36. From April through August 2015, Ackerman conducted most of his key interviews for the book, including those with Henk Rogers, Alexey Pajitnov, Maya Rogers, Minoru Arakawa and Howard Lincoln, all of whom were featured in the book and film as major characters. For instance, on April 14, 2015, Mr. Ackerman held a conference call with Kimi Tsai, Maya Rogers, and Sean Maggard to discuss the book.

37. It should also be noted that not only did the Plaintiff interview these figures for his book, but they and their representatives certainly knew months earlier before their interviews of his intent to reshape the history as a spy thriller with Henk Rogers as a heroic protagonist.

38. A first draft of The Tetris Effect was completed on or about August 2, 2015.

39. In July 2016, Mr. Ackerman's representatives sent the public relations company for Tetris Company, Zebra PR, a pre-publication copy of The Tetris Effect book, which they provided to Tetris Company and Maya Rogers.

40. After having reviewed the entire book that Mr. Ackerman wrote, Ms. Rogers then used Mr. Ackerman's work, for which Defendant Pink developed a screenplay, the contents of which was taken from the book and deceptively made into a film project without Plaintiff's knowledge or consent, which included the lack of any optioning or licensing rights.

41. To further her unlawful conduct, Ms. Rogers had the Tetris Company refused to license any of the Tetris intellectual property, such as its name and image, for any motion picture or television project based on Mr. Ackerman's book, and threatened legal action if Mr. Ackerman continued to pursue any such projects for his own book and creative work.

42. On September 1, 2016, Tetris Company directly sent a strongly worded Cease and Desist letter to an agent for Mr. Ackerman, whose only crime was doing his job, and  pursing film and television opportunities for the critically acclaimed book.

43. As a result of this threatening letter, Mr. Ackerman's agent withdrew from pursuing film and television opportunities.

44. A major source of revenue for a writer, such as Mr. Ackerman, is to option or license their work for film and television. Therefore, Tetris Company was not attempting to halt any dissemination of any alleged copyright infringement, but rather, to have constituted an economic attack on the whole of Mr. Ackerman's business so they could pursue the opportunities presented by Mr. Ackerman's book to the exclusion of Mr. Ackerman's business opportunities without having to credit or fairly compensate him.

45. Numerous film and television producers showed interest in optioning Mr. Ackerman's book for a film or television project. However, they would not proceed with said projects unless The Tetris Company would license its IP for the project.

46. Tetris Company refused to license any Tetris IP for any project associated with Mr. Ackerman's book. This was done at the direction and behest of Ms. Rogers so that she and the Tetris Company could pursue their own project and opportunities based on Mr. Ackerman's book without compensating him.

47. The book "manuscript" of Tetris Effect, was used by Ms. Rogers and Mr. Pink to construct Mr. Pink's screenplay, and presented Mr. Pink's screenplay as his original creation, even though it was clearly based on Mr. Ackerman's book.

48. For instance, in an interview Ms. Rogers gave on or about March 15, 2023 with GameBeat, she stated as follows:

> "Somebody mentioned to me that this is the first story going behind the scenes with the people that make this happen." See URL: https://venturebeat.com/games/tetris-movie-inside-the-great-game-business-deal-of-all-time-maya-rogers-interview/.

49. Further, in the GameBeat interview, Ms. Rogers confirmed that she was involved with the Tetris movie from the beginning from developing the script and hiring the writer. See URL: https://venturebeat.com/games/tetris-movie-inside-the-great-game-business-deal-of-all-time-maya-rogers-interview/ ("But from the beginning we were involved, from the script stages and hiring the writers"). Game Beat also asked Ms. Rogers if she had any control "over things like the facts used in the script" to which she replied: "From the beginning we were involved with choosing the writer, Noah Pink." See *Id*.

50. Moreover, in the Game Beat interview, Ms. Rogers also confirmed that her alleged Tetris project had indeed begun after she received Mr. Ackerman's book, and after it was published in 2016. For instance, Ms. Rogers stated that "I think it took six years" to make the film. This would mean, that her and Mr. Pink lifted Mr. Ackerman's book in 2017, and began to adapt it into Mr. Pink's screenplay at that time.

51. Accordingly, not only did Tetris Company and Maya Rogers infringe on Mr. Ackerman's copyright, but they actively interfered with his ability to option his book for a TV or film production.

52. The Tetris Effect: The Game That Hypnotized the World, was published on or about September 6, 2016.

53. The book was met with immediate acclaim and was lauded by several prominent publications including the Los Angeles Times Review of Books. [2]

54. On September 17, 2016, the New York Post published a lengthy review of The Tetris Effect titled: "How Tetris broke out of the Soviet Union." This review again noted the Russian

---

[2] See https://lareviewofbooks.org/article/russian-invasion-on-dan-ackermans-the-tetris-effect/ ("Ackerman doles out intrigue worthy of Robert Ludlum or Tom Clancy. It's a behind-the-Iron Curtain nail-biter....")

angle of Mr. Ackerman's book, ELORG, and in a headline how Tetris "became the Soviet Union's greatest commercial export." [3]

55. Other publications such as WIRED, Entertainment Weekly, CNET, CBS this Morning and even the New York Times all covered Mr. Ackerman's book to rave reviews. See e.g. [4].

56. Accordingly, and as the foregoing demonstrates, the Defendants had access and knowledge of Mr. Ackerman's book beginning in October 2014, and seven (7) years prior to the premiere of the Tetris movie. By the time the Tetris movie aired in 2023, The Tetris Effect book, had been widely reviewed, and distributed.

57. On or about March 23, 2023, Mr. Ackerman and others viewed the trailer for Tetris and immediately recognized the substantial similarity with the Plaintiff's book. Apple was alerted as were the other Defendants, of which a cease and desist demanded that the movie not be broadcast until certain legal issues were addressed.

58. Defendants elected to proceed and so on March 31, 2023, the Tetris movie premiered on Apple TV.

59. Following the premiere of the Tetris movie, even more glaring similarities emerged throughout the duration of the film, a sampling of such observations are illustrated below:

    a. 00:01: The film opens with the events from Chapter 13, "Tetris Takes Las Vegas". That chapter (and the movie) explicitly referenced the connection between Tetris and the Japanese game Go in Henk's mind;

---

[3] https://nypost.com/2016/09/17/how-tetris-broke-out-of-the-soviet-union/.

[4] See https://www.wired.com/2016/08/the-tetris-effect-excerpt/; https://ew.com/article/2016/05/17/bookexpo-america-2016/; See https://twitter.com/danackerman/status/798919608304566272 (Mr. Ackerman tweeted out in regards to the publication of Tetris Effect, and that an excerpt of the book would be published in the subsequent issue of CNET). See also Mr. Ackerman's interview with CBS this morning at: https://www.youtube.com/watch?v=gSD-_-uuoCo; and a discussion Mr. Ackerman gave on C-Span at: https://www.c-span.org/video/?414688-1/the-tetris-effect; and NYT review at:

b. 00:05: Henk refers to Alexy in the unusual fashion of "Alexey Leonidovich Pajitnov" – with his rarely used middle name. In The Tetris Effect, Alexy is introduced the same way in Chapter 2, which is literally titled "Alexey Leonidovich Pajitnov";

c. 00:09: Hiroshi Yamauchi -- follows along with Chapter 1, "The Great Race", detailing how Henk Rogers snuck into Nintendo to meet Yamauchi (page 9) and made a rare deal to become an outside publisher;

d. 00:15: Beginning of the Cold War thriller content, and apes Chapter 12, "Welcome to Elorg";

e. 00:20: The introduction of the Game Boy from Minoru Arakawa to Henk Rogers is very similar to Mr. Ackerman's recreation in Chapter 16, "A Secret Plan", including the multiple references to Nintendo's R&D1 lab. Arakawa rarely gives interviews, but he spoke to Mr. Ackerman at length about his relationship with Henk and related events (as did Howard Lincoln);

f. 00:23: Closely follows and paraphrases Mr. Ackerman retelling of Henk convincing Arakawa to pair Game Boy with Tetris from page 171;

g. 00:27: Chapter 17, "The Gathering Storm", closely follows Henk's offer of $25,000 to Robert Stein for handheld Tetris rights and the latter's cagey response;

h. 00:29: The almost identical discussion of Henk's risky tourist visa vs. a business visa to Moscow, as discussed starting on page 3, including the intimations of KGB surveillance;

i. 00:31: Almost an exact copy of Mr. Ackerman's narrative scene on page 31, with Henk asking a frightened hotel clerk where to find Elorg;

j. 00:33: Finding the local interpreter in Moscow closely follows Mr. Ackerman's version starting on page 11, including the interpreter's warning about entering government buildings without an invitation or appointment;

k. 00:35: The illustrated "explainer" of the chain of ownership for Tetris rights very closely copies Mr. Ackerman's description of the same chain on page 165. The conversation between Belikov and Rogers closely mirrors Mr. Ackerman's description on page 182 and the explanation of a missing videotape of example gameplay from page 187;

l. 00:39: The conference room scene closely mirrors Mr. Ackerman's version starting on page 183 -- some of his description of that meeting was Mr. Ackerman's own narrative invention and is copied by the film, followed by his description of the first meeting between Alexy and Henk and their initial rapport. The rest of this scene closely follows the narrative structure Mr. Ackerman laid out in Chapter 18, "The Big Bet" and Chapter 19, "Enemies at the Gate" — including the dueling meetings with Robert Stein and Kevin Maxwell and the added emphasis Henk's examination of Stein's contract and subsequent explanation of the contractual differences between a computer and game console;

m. 00:47: This scene mimics the precise definition of a computer from one of the contracts Mr. Ackerman highlighted on page 198, "PC computers which consist of a processor, monitor, disk drive(s), keyboard, and operating system." Followed by a close retelling of the meeting between Belikov and Stein, like Mr. Ackerman's version on page 192;

n.  00:49: Henk and Alexey's conversation about the former being invited to the latter's home is from a direct interview Mr. Ackerman had with Alexey and recounted in the book on page 185, including Alexey showing Henk some of his original programming work and their evolving bond;

o.  01:06: The scene of a physical race between Henk and Robert Stein echoes the title and theme of Chapter 1, "The Great Race", which lays out how Rogers, Stein and Maxwell were literally in a race to get to the Elorg offices first;

p.  01:11: The scene closely follows the tone and pacing Mr. Ackerman set out in Chapter 19, pages 194-196;

q.  01:13: Elorg asking Henk to bid on game console rights to Tetris, in addition to handheld, and closely mirrors Mr. Ackerman's version from pages 189-190. "[Belikov] told Rogers to go back and consult with his Japanese backers and return with an offer. 'You have three weeks'";

r.  01:15: The scene where Henk's guide turns out to be a KGB agent mirrors Mr. Ackerman's narrative invention from page 181: "Even the guide who had miraculously appeared at the last moment to lead him to this otherwise anonymous government building could just mean he was being tracked the entire time";

s.  01:24: The film discusses the obscure world of '80s game console lockout chips and the series of lawsuits between Nintendo and Atari/Tengen, which is recounted in detail in Chapter 20, "Meet at the Chicken", starting on page 201. Further, details about Maxwell and Microsoft missing a deadline for 'videogame rights' offer to Elorg follows directly after, both in the book and the film;

t.  01:29: Closely follows the action of Chapter 20, "Meet at the Chicken", starting on page 208, including the specific offer of $5 million for combined rights and Maxwell's failure to match it;

u.  01:34: The Maxwell/Gorbachev scene in the film is loosely invented but represents a clear interpretation of a scene from Chapter 21, "A Tale of Two Tetrises", which includes the story of a letter from Robert Maxwell to Gorbachev. That version of the story was personally related to Mr. Ackerman for the book by video game industry vet Phil Adam, who was assigned to hand-deliver the letter to Gorbachev (page 221);

v.  1:52: The final sequence of "Where Are They Now" biographies of the various players closely resemble the book's final Chapter, "Epilogue: The Final Bricks", detailing what happened to Henk and Alexey, Robert Stein and Robert and Kevin Maxwell.

60. As reflected herein, the Tetris film was substantially similar, and in many examples, the same, as Plaintiff's book, published nearly seven (7) years prior to national coverage. The film liberally borrowed numerous specific sections and events of the book.

## CAUSE OF ACTION ONE

## COPYRIGHT INFRINGEMENT

### (Against All Defendants)

61. Plaintiff repeats, repleads and incorporates by reference each and every allegation of paragraphs 1 through 60 of this Complaint as though set forth in full herein.

62. As set forth more fully above, in copying Plaintiff's work, Defendants willing and intentionally sought to appropriate Plaintiff's hard work for their own profit without bearing the

costs thereof. The time commitment for the development and cost, coupled with the research, interviews, drafting, revisions, and ultimate publication was a substantial investment of time, money and energy for Plaintiff.

63. Defendant sought to realize profit and unjust gains from Plaintiff's work, without investing the same amount of time, money and creative thought, and to take away profits from Plaintiff's work that he would have realized but for their wrongful acts.

64. Plaintiff Ackerman's book is an original work, copyrightable under the Copyright Act. Plaintiff applied and was granted a copyright in his work in 2016. The registration number is set forth in **Exhibit One**. Thus, Plaintiff has exclusive rights and privileges to reproduce, distribute, and license The Tetris Effect for any other medium, including a feature film.

65. Plaintiff has never authorized any of the Defendants, by license or otherwise, to copy, reproduce, distribute, or display any of the copyrighted material from The Tetris Effect book, nor to prepare derivative works based on The Tetris Effect book.

66. Defendants infringed Plaintiff's exclusive rights in The Tetris Effect book by copying, reproducing, and distributing and displaying it and/or derivative works derived therefrom in the Tetris movie without Plaintiff's permission and without compensating him whatsoever.

67. Each infringing copy, duplication, sale, license or display of the Tetris film, constitutes a claim against Defendants under the Copyright Act.

68. Plaintiff has sustained, and will continue to sustain, substantial damage to the value of his copyright in that the previously described activities of Defendants have diminished and will continue to diminish the revenues that Plaintiff would otherwise receive.

69. In addition, Defendants have realized unlawful and unjust profits from the unauthorized and illegal copying of Mr. Ackerman's story, idea and book into their screenplay and film.

70. Defendants continue to infringe the copyrights listed on **Exhibit One**, and unless temporarily, preliminarily and permanently enjoined by Order of this Court, will continue to infringe said copyrights, all to the Plaintiff's irreparable injury.

71. As a direct result of the conduct of Defendants, Plaintiff has suffered and continues to suffer damages in an amount to be determined. For instance, the Tetris film was, upon information and belief, produced with a budget of approximately $80,000,000.00, which continues to air on Apple TV.

72. Plaintiff was unable to realize any profit or compensation from licensing his work for a film a TV production, or receive any residuals, or other profits and compensation traditionally paid to a writer when his work is licensed or adapted for a screenplay and film.

73. Defendants have committed all of the aforesaid acts deliberately, willfully, maliciously and oppressively, without regard to Plaintiff's proprietary rights.

74. As such, the above described conduct by Defendants constitutes willful copyright infringement under the Copyright Act.

75. As a result of the above described conduct by Defendants, Plaintiff has been damaged in an amount to be proven at trial, but for no less than 3% of the Tetris films total production budget.

76. By reason of the copyright infringement described above, Plaintiff is entitled to recover Defendants' profits to the extent the same are not included as part of Plaintiff's damages.

77. In the alternative, at the election of Plaintiff, Plaintiff is entitled to recover from Defendants statutory damages up to $150,000.00 per copyright infringed for Defendants' willful copyright infringement, plus attorney's fees and costs.

WHEREFORE, Plaintiff respectfully requests the following relief:

1. Actual and compensatory damages in an amount equal to 3% of the total production budget of the Tetris film;

2. For an Order enjoining Defendants, their officers, agents, employees, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter from:

   (a) infringing, or contributing to or participating in the infringement by others the copyright in the Tetris Effect book or acting in concert with, aiding and abetting others to infringe said copyright in any way;

   (b) copying, duplicating, selling, licensing, displaying, or distributing the Tetris film (or any derivative works) without properly compensating and crediting Plaintiff;

   (c) That Defendants be required to account for and pay over to Plaintiff the actual damages suffered by Plaintiff as a result of the infringement and any profits of the Defendants attributable to the infringement of Plaintiff's copyright or exclusive rights under copyright and to pay such damages to Plaintiff as to this Court shall appear just and proper within the provisions of the Copyright Act, or, in the alternative, at Plaintiff's election, statutory damages for infringement of each

3. That Defendants be required to account for and pay over to Plaintiff the actual damages suffered by Plaintiff as a result of the infringement and any profits of the Defendants attributable to the infringement of Plaintiff's copyright or exclusive rights under copyright and to pay such damages to Plaintiff as to this Court shall appear just and proper within the provisions of the Copyright Act, or, in the alternative, at Plaintiff's election, statutory damages for infringement of each separate copyright as set forth in 17 U.S.C. § 504;

4. For an award of costs under 17 U.S.C. § 505 or as otherwise provided by law;

5.  For an award of attorneys' fees pursuant to 17 U.S.C. § 505;

6.  For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

7.   For such other and further relief as the Court deems just and proper.


## CAUSE OF ACTION TWO

## UNFAIR COMPETITION

## (Against MAYA ROGERS, TETRIS COMPANY AND NOAH PINK)

78. Plaintiff repeats, repleads and incorporates by reference each and every allegation of paragraphs 1 through 77 of this Complaint as though set forth in full herein.

79. As set forth more fully above, Defendants Rogers, Tetris Company and Pink obtained Mr. Ackerman's pre-publication work improperly.

80. As set forth more fully above, Defendants Rogers, Tetris Company and Noah Pink misappropriated the fruit of Plaintiff's labors and expenditures by obtaining access to Plaintiff's creative work and intellectual property through fraud or deception, and abused a confidential relationship.

81. As set forth more fully above, Defendants Rogers, Tetris Company and Noah Pink took and used Plaintiff's creative work and book to compete against the Plaintiff's own use of the same creative work.

82. Ms. Rogers and the Tetris Company also refused to license any Tetris IP related to any film or television projects being pursued or related to Mr. Ackerman's book. This was done so that they could pursue their own film project based upon Mr. Ackerman's book to the exclusion

of Mr. Ackerman, and without compensating or crediting him, and so Rogers and Tetris could claim the project as their own original creation.

83. As such, Defendants Rogers, Tetris Company and Noah Pink engaged in unfair competition through fraud or bad faith, and misappropriated the labors and expenditures of Mr. Ackerman for their own unjust and unlawful gain, and at the expense of Mr. Ackerman's own opportunities.

84. Mr. Ackerman suffered damages as a result of Defendants unfair competition.

WHEREFORE, Plaintiff respectfully requests the following relief:

1. Actual and compensatory damages in an amount equal to  3% of the total production budget of the Tetris film;

2. For an Order enjoining Defendants, their officers, agents, employees, and those acting in concert or conspiracy with them, temporarily during the pendency of this action and permanently thereafter;

3. Statutory attorney fees and costs;

4. For an award of pre-judgment interest and post-judgment interest in the maximum amount permitted by law;

5.  For such other and further relief as the Court deems just and proper.

## CAUSE OF ACTION THREE

## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

### (Against MAYA ROGERS and TETRIS COMPANY)

85. Plaintiff repeats, repleads and incorporates by reference each and every allegation of paragraphs 1 through 84 of this Complaint as though set forth in full herein.

86. As set forth more fully above, the conduct of Rogers and Tetris Company tortuously interred with Mr. Ackerman's existing and prospective business relationships with his representation, including threatening to take legal action against his agent if he continued to shop Mr. Ackerman's own book to option for film and television projects, and refusing to license any Tetris IP for any television or film project related to Mr. Ackerman's book.

87. As a result, not only did his agent withdraw from further representation, but numerous television and film producers that showed interest in optioning Mr. Ackerman's book for a television series or film, could not move forward and were unable to complete a deal to option the book.

88. As such, Mr. Ackerman had a business relationship with a third party, namely, his agent, and various other film and television producers and agents that showed interest in his book and wanted to acquire the rights to it and option the book for a television or film project.

89. Rogers and Tetris Company were obviously aware of these relationships as they even sent a Cease and Desist letter directly to Mr. Ackerman's representation, and refused to license any Tetris IP for any projects associated with Mr. Ackerman's book.

90.  Rogers and Tetris Company used dishonest, unfair or improper means, and injured Plaintiff's relationships with his representation as well as various film and television producers and agents.

WHEREFORE, Plaintiff respectfully requests the following relief:

1.  Actual and compensatory damages in an amount equal to  3% of the total production budget of the Tetris film;

2.  Punitive damages equal to 3% of the total production budget of the Tetris film;

3. For an award of pre-judgment interest and post-judgment interest in the maximum
   amount permitted by law;

4. For such other and further relief as the Court deems just and proper.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury on all issues so triable.

Dated: New York, New York
       August 7, 2023

                                         Respectfully submitted,

                                         **THE LANDAU GROUP, PC**

By:    /s/ Kevin A. Landau
                         _____
                         Kevin A. Landau
                         Zachary R. Landau (pro hac vice forthcoming)
                         45 Rockefeller Plaza, Suite 2000
                         New York, New York 10111
                         212.537.4025

                         *Attorneys for Plaintiff Dan Ackerman*